# UNITED STATES DISTRICT COURT

<u>    NORTHERN    </u> DISTRICT OF <u>   ILLINOIS, EASTERN DIVISION   </u>

UNITED STATES OF AMERICA

v.

NELSON RODRIGUEZ

**FILED**

AUG 0 7 2008
August 7, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CRIMINAL COMPLAINT

**MAGISTRATE JUDGE COLE**

CASE NUMBER:

08CR 628

I, James C. Chupik, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

On <u>August 5, 2008,</u> in <u>Cook</u> County, in the <u>Northern</u> District of <u>Illinois, Eastern Division,</u> defendant did,

> attempt to knowingly and intentionally possess with the intent to distribute a controlled substance, namely, in excess of 500 grams of mixtures containing cocaine, in violation of Title 21, United States Code, Section 841(a)(1),

in violation of Title <u>  21  </u> United States Code, Section <u>  846  </u>.

I further state that I am a(n) <u>Special Agent, Drug Enforcement Administration</u>, and that this complaint is
                                                 Official Title
is based on the following facts:

See Attached Affidavit.

Continued on the attached sheet and made a part hereof:  <u>X</u>  Yes  ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

<u>August 7, 2008</u>            at  <u>4:00 pm</u>                         <u>Chicago, Illinois</u>
Date                                 Time                                    City and State

<u>Magistrate Judge Jeffrey Cole</u>                                     _____
Name & Title of Judicial Officer                                       Signature of Judicial Officer

| | |
|---|---|
| UNITED STATES DISTRICT COURT | ) |
| | ) ss |
| NORTHERN DISTRICT OF ILLINOIS | ) |

## AFFIDAVIT

I, JAMES C. CHUPIK, being duly sworn, state as follows:

1) I am a Special Agent with the United States Drug Enforcement Administration ("DEA"), United States Department of Justice. I have been employed by the DEA since approximately January 2004 and I am currently assigned to an enforcement group within the DEA Chicago Field Division, Chicago, Illinois. Prior to my current employment, I was employed by the Norfolk (Virginia) Police Department in May 1996 and later assigned as a drug investigator with the Department's Narcotics Division from August 1998 to January 2004.

2) As a Special Agent, I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3) My official DEA duties include investigating criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846 and 848. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. Some of the specialized training I have received includes, but is not limited to, classroom instruction concerning narcotics smuggling, money laundering investigations and conspiracy and complex investigations. I have worked in several investigations involving various types of electronic surveillance, including the interception of wire communications, the debriefing of defendants, witnesses and informants, as

1

well as others who have knowledge of the distribution and transportation of controlled substances, the laundering and concealing of proceeds from drug trafficking and the street gangs who participate in these illegal activities.

### Purpose of the Affidavit

4)      I am familiar with the facts and information contained in this affidavit from my own personal observations, witness interviews, surveillance, review of video surveillance, analysis and review of documents and records, and discussions with other law enforcement agents and officers involved in this investigation. Because this affidavit is submitted solely for the purpose of establishing probable cause in support of a criminal complaint, the information contained herein is described in summary form and is not every fact known to me regarding this investigation. Where statements of others are set forth in this affidavit, they are set forth in substance and in part, and are not verbatim. Statements from recorded conversations do not include all statements or topics covered during the course of the recorded conversation, and are not taken from a final transcript.[1]

5)      Based on the information contained in this affidavit, I submit that there is probable cause to believe that on or about August 5, 2008, NELSON RODRIGUEZ did attempt to knowingly and intentionally possess with intent to distribute a controlled substance, namely, in excess of 500 grams of mixtures containing cocaine, in violation of 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846.

---

[1]     The words included with quotation marks are based on summaries, and not final transcript. At various points in the affidavit, I will set forth in brackets or otherwise my understanding of coded words and phrases used during the recorded conversations. My understanding of these coded words and phrases is based on my training and experience, my knowledge of this investigation as a whole, and information provided by the confidential source ("CS") described herein.

### Recorded Calls Between the CS and RODRIGUEZ

6) On or about August 4, 2008, at approximately 4:12 p.m., a cooperating source ("CS")[2] placed a consensually-recorded telephone call to RODRIGUEZ at cellular telephone number (773) 263-8360 (the "RODRIGUEZ Telephone Number"). The CS received RODRIGUEZ's voicemail box and left a message requesting that RODRIGUEZ call him/her back. During previous meetings between the DEA and CS, CS had identified RODRIGUEZ, whom he knew only by the name "Nelson," as an individual who had previously engaged in narcotics transactions.

7) On or about August 4, 2008, at approximately 4:35 p.m., the CS had a consensually-recorded call with RODRIGUEZ at the RODRIGUEZ Telephone Number. During the conversation, using coded language, the CS told RODRIGUEZ that he/she had spoken to a guy named "Paco," an alleged source of supply for cocaine, and that "Paco" could supply RODRIGUEZ with kilograms of cocaine if RODRIGUEZ desired. The CS further informed RODRIGUEZ that "Paco" wanted to do the transaction near his "house" in "Arlington" (Arlington Heights, Illinois). RODRIGUEZ expressed some reservations about traveling from his house[3] to Arlington Heights. In turn, CS told RODRIGUEZ that "Paco" did not want to travel to Chicago and then assured RODRIGUEZ that he/she "saw that (meaning the cocaine that "Paco" purportedly had for sale)" and that it was "perfect (meaning that its quality was very

---

[2] The CS expects to be charged with narcotics-related charges and is cooperating with DEA in the hope of receiving a recommendation for a reduced sentence on such charges. In 2003, the CS was convicted on Illinois state charges for manufacturing and delivery of cocaine and was sentenced to a term of imprisonment and fined. The CS has also been arrested for additional offenses, but was not convicted.

[3] Based on prior surveillance, the DEA determined that RODRIGUEZ lives on North Kimball in Chicago, Illinois.

3

good)." RODRIGUEZ asked the CS where exactly "Paco" was located and the CS told him that it was near "Arlington and Algonquin...just north of Devon." RODRIGUEZ then asked the CS, "what's the number on that (how much was "Paco" charging per kilogram)?" The CS replied, "twenty-three dollar, and it won't be a loss ("Paco" was charging $23,000 per kilogram and that RODRIGUEZ would not be dissatisfied with the cocaine's quality)." RODRIGUEZ responded, "two and one-half (he wanted to pay only $22,500, not $23,000 for the kilogram)" and complained about having to travel to Arlington Heights.

8)　Later in the evening on August 4, the CS contacted a DEA agent via telephone and advised that he had just met with RODRIGUEZ at RODRIGUEZ's home and had spoken with him there. The CS stated that RODRIGUEZ told him that he was willing to travel to Arlington Heights to purchase the negotiated kilogram of cocaine on August 5, 2008. According to the CS, RODRIGUEZ requested that the CS meet him on Harlem Avenue near Interstate 90 so that he could follow the CS to Arlington Heights to complete the transaction. According to the CS, RODRIGUEZ told the CS that he was not familiar with Arlington Heights and feared that he would get lost if he tried to find his way on his own.

9)　On August 5, 2008, at approximately 10:35 a.m., the CS had a consensually-recorded call with RODRIGUEZ at the RODRIGUEZ Telephone Number. During their conversation, RODRIGUEZ told the CS that he was "going where" he told the CS he was going to be and that he needed to make "a stop" first (RODRIGUEZ confirmed with the CS that he would meet the CS at Harlem Avenue and Interstate 90, as planned, but that he needed to pick up the money to be used to purchase the cocaine (the "Purchase Money") before meeting the CS). Using coded language, the CS told RODRIGUEZ that he told "him (the alleged source of supply

for the cocaine)" that they would pick up the cocaine at "12:30" p.m. The CS asked RODRIGUEZ to call him/her once RODRIGUEZ arrived at Harlem Avenue and Interstate 90 so that he/she "can pick him up (once RODRIGUEZ arrived at the meeting location, the CS would arrive and lead RODRIGUEZ back to Arlington Heights)."

10) At approximately 12:15 p.m., the CS had an unrecorded call with RODRIGUEZ at the RODRIGUEZ Telephone Number. Once the call was concluded, the CS was debriefed by agents. According to the CS, RODRIGUEZ told the CS that he was at the gas station located on Harlem Avenue, just off of Interstate 90. The CS agreed to meet RODRIGUEZ at that location. After the call, the CS informed DEA agents that, based on his prior experience with RODRIGUEZ, he knew that RODRIGUEZ generally drove a white pick-up truck with a short bed.

### Meeting Between the CS and RODRIGUEZ

11) At approximately 12:35 p.m., the CS was equipped with an audio recording device to be worn on or about his/her person during the meeting with RODRIGUEZ. The CS was then directed to travel to Harlem Avenue and Interstate 90 and then lead RODRIGUEZ back to Arlington Heights. The DEA established and maintained surveillance on the CS from this time through the time of RODRIGUEZ's subsequent arrest.

12) At approximately 12:43 p.m., surveillance agents ("Surveillance") observed RODRIGUEZ parked in the Shell gas station, located on the west side of Harlem Avenue, just south of Interstate 90. Surveillance saw RODRIGUEZ standing in front of his white Chevrolet pick-up truck, bearing Illinois registration 54034M. Surveillance saw the CS drive into the Shell gas station parking lot and pull up next to RODRIGUEZ and his truck and, within seconds, the

CS, followed by RODRIGUEZ and the white Chevrolet truck, departed northbound on Harlem Avenue. Surveillance observed that the CS and RODRIGUEZ, who were traveling in tandem, entered Interstate 90 going westbound.

13) At approximately 12:47 p.m., the CS contacted a DEA agent and advised that RODRIGUEZ told him/her that he (RODRIGUEZ) would need to pull his truck into a garage to retrieve the Purchase Money from his truck. RODRIGUEZ told the CS that he had the currency hidden behind a "board" somewhere within his truck.

14) At approximately 1:00 p.m., Surveillance observed the CS, followed by RODRIGUEZ, exit northbound on Arlington Heights Road and the signal was given to the arrest team, who waiting just off Interstate 90, to stop and arrest RODRIGUEZ.

15) Agents searched RODRIGUEZ'S vehicle at the Arlington Heights police station and recovered a large sum of United States Currency which was concealed behind a screwed-in piece of molding. The molding, which was located behind the driver's side seat, was held in place by Phillips screws. DEA agents observed that there was an orange-handled, Phillips screw driver located on the front seat of RODRIGUEZ'S truck and utilized that screw driver to retrieve the currency from behind the molding. According to a count by Brink's Security on August 7, 2008 of the money seized, the amount of money was $22,000, which is consistent with the purchase price negotiated between the CS and RODRIGUEZ for the one kilogram of cocaine.

### Statement of RODRIGUEZ on August 5, 2008

16) While en route to the Arlington Heights police station, agents advised RODRIGUEZ verbally of his *Miranda* rights, which he indicated that he understood. He then indicated that he wished to talk to agents. In summary, RODRIGUEZ advised agents that he was

negotiating with a subject named "Alex" (meaning CS) to purchase one kilogram of cocaine and that he drove to Arlington Heights to view the kilogram. RODRIGUEZ stated that he did not have any United States Currency with him at the time of his arrest.

### Conclusion

17) Based on the foregoing facts, I submit that there is probable cause to believe that on or about August 5, 2008, NELSON RODRIGUEZ did attempt to knowingly and intentionally possess with intent to distribute a controlled substance, namely, in excess of 500 grams of mixtures containing cocaine, in violation of 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846.

FURTHER AFFIANT SAYETH NOT.

James C. Chupik
Special Agent
Drug Enforcement Administration

Subscribed and sworn before me
this __ day of August, 2008

Hon. Jeffrey Cole
United States Magistrate Judge